NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12730

IN THE MATTER OF GREGORY M. OLCHOWSKI.


Suffolk.     February 11, 2020. - October 1, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.[1]


Board of Bar Overseers.  Treasurer and Receiver General.
    Attorney at Law, Disciplinary proceeding, Client funds.
    Abandoned Property.


    Information filed in the Supreme Judicial Court for the
county of Suffolk on September 21, 2012.

    A motion to remit funds, filed on October 18, 2018, was
reported by Kafker, J.


    Maureen Mulligan (Kristyn M. Kelley also present) for
Massachusetts IOLTA committee.
    Timothy J. Casey, Assistant Attorney General, for Treasurer
and Receiver General.
    Robert M. Daniszewski, Assistant Bar Counsel, was present
but did not argue.
    Michael J. Serduck, for the respondent, was present but did
not argue.
    The following submitted briefs for amici curiae:
    Karen D. O'Toole for Massachusetts Clients' Security Board
& another.

_____

    [1] Chief Justice Gants participated in the deliberation on
this case and authored this opinion prior to his death.

Jeffrey D. Woolf for Board of Bar Overseers.

Mary K. Ryan, Micah W. Miller, Martin W. Healy, Thomas J. Carey, Jr., & Francis C. Morrissey for Boston Bar Association & others.

Georgia D. Katsoulomitis, Jacquelynne Bowman, Jonathan Mannina, Elizabeth A. Soule, George Weber, Susan Nagl, Richard Dubois, Elizabeth Matos, John A. Froio, Jay McManus, Kathleen B. Boundy, Cathy Costanzo, & Janine Solomon for Massachusetts Law Reform Institute & others.

GANTS, C.J.  The question presented in this case concerns the proper disposition of unidentified client funds on deposit in an Interest on Lawyers' Trust Account (IOLTA or IOLTA account):  should they be remitted to the Commonwealth's general fund under the abandoned property statute, G. L. c. 200A, or to the IOLTA committee pursuant to this court's inherent authority to govern the conduct of Massachusetts attorneys?  We conclude that trust funds on deposit in an IOLTA account do not fall within the statutory definition of "abandoned property" and therefore the disposition of these funds is not governed by G. L. c. 200A.  We also conclude that unidentified IOLTA funds should be transferred to the IOLTA committee for disposition, as set forth in this opinion.[2]

---

[2] We acknowledge the amicus briefs submitted by the Board of Bar Overseers; the Massachusetts Clients' Security Board and the Massachusetts Clients' Security Fund; the Boston Bar Association, the Massachusetts Bar Association, and the Real Estate Bar Association for Massachusetts, Inc.; and the Massachusetts Law Reform Institute.

Background.  We recite the facts of this case as stated in the parties' joint statement of undisputed facts.  On November 23, 2012, this court issued an order temporarily suspending Gregory M. Olchowski from the practice of law.  As part of this order, in accordance with our rules governing bar discipline and clients' security protection, Olchowski was directed to notify each of his clients that he had been suspended from the practice of law and could no longer represent them, to make all files available to clients, to refund fees not earned, to close every IOLTA, client, trust or other fiduciary account, and to disburse all client and fiduciary funds in his possession.  See S.J.C. Rule 4:01, § 17 (1), as amended, 426 Mass. 1301 (1997).

At the time of Olchowski's temporary suspension, he maintained two IOLTA accounts, one with Bank of America and one with Citizens Bank, which held a combined total of $29,927. Olchowski was unable to identify the owners of the funds in the IOLTA accounts, so Olchowski's accountant, a Massachusetts-certified public accountant, undertook to try to identify the owners of the unidentified funds.  However, the accountant was unable to discover the identity of any of the owners of the funds in Olchowski's IOLTA accounts.[3]

---

[3] In May 2013, we issued a judgment disbarring Gregory M. Olchowski, retroactive to November 23, 2012.

On December 11, 2017, Olchowski's attorney notified the Office of Bar Counsel (bar counsel) that there were unidentified funds in Olchowski's IOLTA accounts. Subsequently, a financial investigator from the office examined Olchowski's IOLTA accounts to try to determine the owners of the funds. Bar counsel obtained the records for the two IOLTA accounts from the office of Olchowski's former accountant and subpoenaed records from the two banks where the accounts were opened. After reviewing these records, the investigator was unable to determine the owner or owners of the unidentified funds in either of Olchowski's IOLTA accounts.

While efforts were being made to identify the owners of the funds, Olchowski's attorney transferred the unidentified funds from the IOLTA accounts into an escrow account. At the time briefs were filed in this case, the escrow account balance was $29,952, including the unidentified funds and twenty-five dollars deposited to open the account. Automatic withdrawals transferring monthly interest payments to the IOLTA committee continued to be made from this account.

In October 2018, Olchowski's attorney moved that the single justice order the transfer of the unidentified funds from Olchowski's two IOLTA accounts to the IOLTA committee. The motion was served on the director of the unclaimed property division of the office of the Treasurer and Receiver General

(Treasurer), and the director of the IOLTA committee. The Treasurer moved to intervene and requested that the funds be remitted to the treasury as "abandoned property" under G. L. c. 200A. The IOLTA committee then moved to intervene and requested that the funds be remitted to it. Bar counsel took "no position on the issue of whether IOLTA funds whose owners cannot be identified . . . should escheat to the [Treasurer] or be remitted to the IOLTA [c]ommittee," but requested that it be notified of the existence of unidentified funds and have the opportunity to complete "any investigation and review it deems necessary" to determine whether the attorney responsible for the IOLTA accounts should be disciplined and "to ensure that the owners in fact are unknown."

The single justice reserved and reported the matter to the full court, stating that "[t]he ultimate question for the court to decide is where these particular unidentified client funds should go" -- either to the Commonwealth as unclaimed property or to the IOLTA committee. Additionally, the single justice noted that in answering this ultimate question, we would likely have to address three subsidiary questions: (1) "Do unidentified client funds on deposit in an IOLTA account fall within the statutory definition of 'abandoned property' under G. L. c. 200A?"; (2) "Does Mass. R. Prof. C. 1.15, [as appearing in 471 Mass. 1380 (2015),] or any other rule of this court,

govern the disposition of such funds?"; and (3) "Are any constitutional issues raised by the parties' proposed disposition(s) of the funds?"

Discussion. 1. Supreme Judicial Court's superintendence authority over the practice of law. To address these issues, we first explain our governance of the bar and the practice of law. Among the inherent superintendence powers of the Supreme Judicial Court is the authority to govern the conduct of attorneys in the practice of law. See Collins v. Godfrey, 324 Mass. 574, 576 (1949) ("It must now be regarded as settled that in the distribution of powers under art. 30 [of the Massachusetts Declaration of Rights] the ultimate power of general control over the practice of law by its own officers fell to the judicial department"). See also Opinion of the Justices, 375 Mass. 795, 813 (1978) ("As to attorneys admitted to practice before the courts of the Commonwealth, we retain the ultimate authority to control their conduct in the practice of law"). This superintendence authority includes determining who is qualified to be admitted to the bar to practice law, controlling the practice of law through rules of professional conduct, disciplining attorneys who violate those rules, and suspending and disbarring those attorneys who are no longer fit to practice law. See Opinion of the Justices, 279 Mass. 607, 609-610 (1932) ("It is an inherent power of [the judicial]

department of government ultimately to determine the qualifications of those to be admitted to practice in its courts, for assisting in its work, and to protect itself in this respect from the unfit, those lacking in sufficient learning, and those not possessing good moral character").

In the exercise of this superintendence authority, we have promulgated several rules, including S.J.C. Rule 3:07, as amended, 480 Mass. 1315 (2018) (Massachusetts Rules of Professional Conduct), which governs the conduct of attorneys; S.J.C. Rule 4:01, which governs bar discipline, and establishes the Board of Bar Overseers (board) to adjudicate disciplinary matters and bar counsel to investigate and prosecute such matters; and S.J.C. Rules 4:04 through 4:06,[4] which establish the Clients' Security Board to reimburse clients for losses arising from the misappropriation of funds by members of the bar acting either as attorneys or fiduciaries. In short, this court has established a series of rules that together govern the conduct of attorneys, provide for the discipline of attorneys who violate the rules of professional conduct, and protect clients from losses arising from defalcations by members of the bar.

---

[4] S.J.C. Rule 4:04, as appearing in 482 Mass. 1301 (2019); S.J.C. Rule 4:05, as appearing in 482 Mass. 1303 (2019); and S.J.C. Rule 4:06, as appearing in 482 Mass. 1304 (2019).

2.  <u>IOLTA accounts</u>.  Rule 1.15 of the Massachusetts Rules of Professional Conduct governs the safekeeping of property entrusted to an attorney.  An attorney in possession of "trust property," defined as the "property of clients or third persons that is in a lawyer's possession in connection with a representation," is required to hold it "separate from [his or her] own property," and deposit trust funds in a "trust account."  Mass. R. Prof. C. 1.15 (a) (1), (b) (1).

An attorney must deposit trust funds in one of two types of interest-bearing trust accounts:  (1) where, in the judgment of the attorney, the trust funds "are nominal in amount, or are to be held for a short period of time," the attorney must deposit trust funds into an IOLTA account; or (2) where the amount of money is more than nominal and is to be held for longer than a short period of time, an attorney must deposit the money into an individual trust account.  Mass. R. Prof. C. 1.15 (e) (6).  With an individual trust account, the identity of the beneficial owner should always be known because the account is held in a client's name, with all accruing interest paid to the client.  Mass. R. Prof. C. 1.15 (e) (3), (6).  But an IOLTA account is a "pooled account" that may hold deposits from multiple clients and third persons at the same time.  Mass. R. Prof. C. 1.15 (e) (6).  A bank holding an IOLTA account does not receive any

identifying information about the client or third person whose funds may be pooled in the attorney's account.

Funds deposited into an IOLTA account may be retainers or advances paid by clients for legal fees that have yet to be actually earned by the attorney, client funds that are awaiting disbursement following judgment or a settlement, or third-party funds that are awaiting distribution, such as the funds distributed after a closing on the sale of real property. See Tyrrell and Casey, Managing Clients' Funds and Avoiding Ethical Problems, at 4-5 (Jan. 2018). Because an IOLTA account is "pooled," because the bank holding the account does not know to whom the funds in an IOLTA account belong, and because an attorney is responsible to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive," Mass. R. Prof. C. 1.15 (c), an attorney is required to adhere to strict record-keeping and reconciliation requirements for an IOLTA account. See Mass. R. Prof. C. 1.15 (f). An attorney with an IOLTA account is required to keep a ledger for each client matter that identifies every receipt or disbursement of trust funds for that matter, so that the attorney knows at all times how much money in the IOLTA account is beneficially owned by each client and third person. See id. And the attorney is required to prepare a reconciliation report no less than every sixty days to verify

the balance for each client and third person.  See Mass. R. Prof. C. 1.15 (f) (1) (C), (E), (F).

Where an attorney fails to keep careful records and prepare periodic reconciliation reports, the risk arises that he or she may not know who is entitled to the trust funds in an IOLTA account, and that the clients and third persons who beneficially own these funds will be deprived of them.  Because attorneys are not routinely required to submit reconciliation reports to anyone, neither a bank nor bar counsel will immediately learn if an attorney has failed to keep proper records.  In order to assist with oversight of attorney record-keeping, financial institutions accepting IOLTA deposits must agree to report any dishonored checks on IOLTA accounts to the board.  Mass. R. Prof. C. 1.15 (h) (1).  Because a dishonored check in an IOLTA account may reflect an attorney's failure properly to manage an IOLTA account, receipt of such notice may trigger an investigation by bar counsel into the attorney's management of his or her IOLTA account, and a request for account documentation and reconciliation reports as part of that investigation.  See Mass. R. Prof. C. 1.15 (h).

When an attorney is suspended from the practice of law, disbarred, or placed in disability inactive status, or resigns from the bar during a disciplinary investigation, the attorney, among other obligations, must within fourteen days close every

individual trust and IOLTA account, properly disburse or transfer all funds in those accounts, and refund any legal fees that were paid in advance but had not been earned.  See S.J.C. Rule 4:01, § 17 (1) (f), (g).  And the attorney within twenty-one days must furnish bar counsel with an affidavit attesting to compliance with these obligations and provide "a schedule describing the lawyer's disposition of all client and fiduciary funds in the lawyer's possession."  S.J.C. Rule 4:01, § 17 (5) (c).  If an attorney's poor record-keeping was not the impetus for bar discipline, an attorney's inability to identify the beneficial owners of IOLTA funds will become apparent when the attorney's IOLTA accounts are closed.  Similarly, IOLTA funds may be unidentified where an attorney who is a sole practitioner is placed on disability inactive status, disappears, or dies, and has made no provisions for the transfer of IOLTA account documents and reconciliation reports, or for the disbursement of funds in an IOLTA account.

Where there are unidentified IOLTA funds arising from a bar disciplinary matter, bar counsel may conduct a forensic investigation to attempt to identify the owners of the funds, as happened in this case.  Because the records in the custody of the bank holding the IOLTA account may not disclose the ownership of these funds, or the amount owned, bar counsel's investigation might require a confidential examination of the

attorney's records, including privileged attorney-client communications and attorney work product. Where unidentified IOLTA funds arise from the death, disability, or disappearance of an attorney, and where no partner, executor, or other responsible person is capable of conducting the attorney's affairs, a single justice of the county court may appoint a commissioner to make an inventory of the attorney's files and protect the interests of the attorney's clients, which includes identifying the owners of the unidentified funds. See S.J.C. Rule 4:01, § 14 (1), as appearing in 425 Mass. 1318 (1997). The commissioner's examination of the attorney's files is confidential; the commissioner "shall not disclose any information contained in any files listed in such inventory without the consent of the client to whom such file relates except as necessary to carry out the order of this court to make such inventory." S.J.C. Rule 4:01, § 14 (2).

Where bar counsel or a court-appointed commissioner identifies the owners of previously unidentified funds in an attorney's IOLTA account, the funds are provided to their rightful owner, assuming the owner can be located. When the owner of funds cannot be identified, it can be inferred that one or more unknown clients or third parties who had entrusted funds to the attorney who was responsible for the IOLTA account have been deprived of funds that are rightfully theirs. Clients who

can establish that they suffered losses arising from defalcations by members of the bar can seek reimbursement from the Clients' Security Board.  See S.J.C. Rule 4:05, as appearing in 482 Mass. 1303 (2019).  But where the true owner of IOLTA funds cannot be identified, he or she cannot be informed that the mismanagement of the attorney's IOLTA account might have caused him or her to suffer losses arising from an attorney's defalcation.

Under Mass. R. Prof. C. 1.15 (g), the interest on IOLTA accounts is distributed to the IOLTA committee, whose members are appointed by this court to oversee the operation of the IOLTA program.  The IOLTA committee, in turn, disburses sixty-seven percent of all IOLTA-generated funds, net of expenses, to the Massachusetts Legal Assistance Corporation and the remaining thirty-three percent to "other designated charitable entities," in proportions ordered by this court, to improve the administration of justice and deliver legal services to those who cannot afford them.  Mass. R. Prof. C. 1.15 (g) (4) (i).  But neither rule 1.15 nor any other rule promulgated by this court declares what happens to the principal in IOLTA accounts when a true owner cannot be identified.

3.  Abandoned property law.  The Treasurer contends that the disposition of unidentified funds in an IOLTA account is governed by the abandoned property law, G. L. c. 200A.  The

abandoned property law, first enacted in St. 1950, c. 801, "sets forth a comprehensive scheme governing the disposition of abandoned property."  Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen., 454 Mass. 174, 176 (2009).  The legislative purposes of the law are threefold:  "protecting true owners' rights, bringing additional revenues to the treasury, and providing a procedure for the transfer of abandoned property."  Id.

The law requires every "person"[5] holding presumptively abandoned funds annually to furnish the Treasurer with a report identifying the name and last known address appearing in its records of the owner of any presumptively abandoned funds of one hundred dollars or more, and transfer those funds to the treasury.  G. L. c. 200A, §§ 7, 8A.  Sixty days before filing the report, the holder of the presumptively abandoned funds must send a notice to the apparent owner of the funds, at the last known address in the holder's records, informing the owner "of the process necessary to rebut the presumption of abandonment."  G. L. c. 200A, § 7A.  If the owner does not timely come forward

_____

[5] The statute defines "person" broadly to include "any individual, corporation, . . . trust, partnership, association, . . . savings bank, . . . national banks, . . . bank holding companies and bank subsidiaries."  G. L. c. 200A, § 1.

to rebut the presumption, the funds are included in the holder's abandoned property report and transferred to the treasury.

Once abandoned property is reported and delivered, the Treasurer's unclaimed property division (division) takes various steps to reunite property with its true owner. The division manages an online database (findmassmoney.com) where individuals can search for abandoned property. The search tool displays, among other information, the apparent owner's name and last known address and the holder who reported the property abandoned. The division also publishes the apparent owners' names in Statewide newspapers twice per year. Consistent with the statute's purpose to reunite property with its true owner whenever possible, there is no statute of limitations for a putative owner of abandoned property to make a claim to the treasury; a person making such a claim may do so "at any time" after the property has been surrendered to the Treasurer. G. L. c. 200A, § 10 (a).

4. Application of the abandoned property law. Chapter 200A would govern unidentified funds in IOLTA accounts only if such funds constitute "abandoned property" under the law. "Abandoned property" is defined in G. L. c. 200A, § 1, as "property presumed unclaimed and abandoned pursuant to this chapter." For funds to be deemed "abandoned property" under c. 200A, they must satisfy two sets of statutory conditions.

First, "the conditions for presumption of abandonment" stated in one of eight enumerated sections in c. 200A must "exist."[6]  G. L. c. 200A, § 1A.  Second, one of the four conditions in § 1A must be met.[7]  See id.  As to the first set of required statutory

---

[6] The eight enumerated sections are G. L. c. 200A, § 3 (abandonment of deposits of property); G. L. c. 200A, § 4 (abandonment of security deposits); G. L. c. 200A, § 5 (abandonment of instruments, documents, and money); G. L. c. 200A, § 5A (abandonment of life insurance proceeds and the like); G. L. c. 200A, § 5B (abandonment of dividends, distributions, and interest in business); G. L. c. 200A, § 6A (abandonment of distribution due in liquidation); G. L. c. 200A, § 6B (abandonment of traveler's checks and other guaranteed instruments); and G. L. c. 200A, § 6D (abandonment of property payable from insurance company demutualization).

[7] The four conditions in G. L. c. 200A, § 1A, are the following:

"(a) the last known address of the apparent owner is in the commonwealth as shown on the records of the person in possession of property;

"(b) no address of the apparent owner appears on the records of the person in possession of the property and

"(1) the last known address of the apparent owner is in the commonwealth, or

"(2) the person in possession of property subject to this chapter is domiciled in the commonwealth and has not previously paid the property to the state of the last known address of the apparent owner, or

"(3) the holder is a government or governmental subdivision or agency of the commonwealth and has not previously paid the property to the state of the last known address of the apparent owner;

"(c) the last known address, as shown on the records of the person in possession of property, is in a state that does not provide by law for the escheat or custodial taking of

conditions, none of the designated sections specifically addresses IOLTA accounts, but the Treasurer contends that § 3, which concerns "deposits" of funds, applies to the unidentified funds in IOLTA accounts.  We disagree.  A careful review of this section reveals that attempting to apply § 3 to IOLTA accounts would be the legal equivalent of trying to fit a square peg into a round hole.

Section 3 provides that a deposit of funds in a bank shall be presumed abandoned unless the "owner" within three years has "[c]ommunicated in writing with the person concerning the deposit," "[b]een credited with interest on a passbook or certificate of deposit at his request," or otherwise done some act with respect to the account, such as depositing or withdrawing funds, transferring funds, or engaging in some transaction regarding the account.[8]  Under § 3, the "owner" of

---

such property and the person in possession of property is domiciled in the commonwealth or is a government or governmental subdivision or agency of the commonwealth; or

"(d) the last known address, as shown on the records of the person in possession of property, of the apparent owner is in a foreign nation and the person in possession of property is domiciled in the commonwealth or is a subdivision or agency of the commonwealth."

[8] The full text of G. L. c. 200A, § 3, provides:

"Any deposit of property with a person having a residence or place of business in the commonwealth, or authorized to do business therein, together with the increments thereon, shall be presumed abandoned unless the owner has, within

the funds in the account is the person named on the account who
is also presumed to be the person who actually owns the funds in
the account.  In fact, the Treasurer's regulations define an
"owner" as "[a] person or entity having a legal or equitable
claim to abandoned property."  960 Code Mass. Regs. § 4.02
(2004).  But with an IOLTA account, the attorney named on the

---

three years next preceding the date as of which reports are
required by [G. L. c. 200A, § 7]:

"(1) Communicated in writing with the person concerning the
deposit; or

"(2) Been credited with interest on a passbook or
certificate of deposit at his request; or

"(3) Had a transfer, disposition of interest or other
transaction noted of record in the books or records of the
person; or

"(4) Increased or decreased the amount of deposit; or

"(5) Owned other property for which clause (1), (2), (3) or
(4) is applicable; provided, however, that the holder
communicates in writing with the owner with regard to such
property that would otherwise be presumed abandoned under
this section at the address at which communications
regarding such other property regularly are received; or

"(6) Had another relationship with the holder concerning
which the owner has:

"(i) communicated in writing with the holder, or

"(ii) otherwise indicated an interest as evidenced by a
memorandum on file prepared by an employee of the holder;
provided, however, that if the holder communicates in
writing with the owner with regard to the property that
would otherwise be presumed abandoned under this section at
the address at which communications regarding the other
relationship regularly are received."

account is not the true owner of the funds; those funds are the property of the clients or third persons who entrusted those funds to the attorney.  See Matter of Sharif, 459 Mass. 558, 565 n.7 (2011).  See also ZVI Constr. Co. v. Levy, 90 Mass. App. Ct. 412, 419 (2016), quoting Phillips v. Washington Legal Found., 524 U.S. 156, 164 (1998) ("the principal held in IOLTA trust accounts is the 'private property' of the client").

The bank has no way to learn the identity of the true owners of the funds, and therefore no way to provide them with the advance notice required under § 7A to prevent these funds from being deemed presumptively abandoned and included in the bank's report of abandoned property it must provide to the Treasurer under § 7.  Additionally, § 7 (b) (1) requires the bank in its report to provide the name and last known address of "each person appearing from the records of the holder to be the owner of any property of the value of one hundred dollars or more presumed abandoned under this chapter," but the bank's records will reveal only the attorney's name and address, not the name and address of the true owner of the funds in the IOLTA account.  Therefore, if IOLTA accounts could be deemed "abandoned property" under § 3, the true owners of these funds would not receive notice by the bank that the account was to be reported abandoned (that notice would go only to the attorney whose name is on the IOLTA account), nor be able to take one of

the six listed actions in § 3 to prevent their IOLTA funds from being presumed abandoned by the bank.

The claims process established by the Treasurer to allow true owners of presumptively abandoned property to claim those funds also does not fit the unique nature of IOLTA accounts. Under the Treasurer's regulations, "the original owner" of the funds is required to submit documentation in support of his or her claims. See 960 Code Mass. Regs. § 4.04(1), (2) (2004). But the usual required documentation, such as the monthly statement of the bank or the holder's certification, is not applicable to an IOLTA account because these documents would not establish a purported owner's beneficial ownership of the funds. The attorney named on the IOLTA account may make a claim on behalf of the true owner, but only if he or she is the "legal representative" of the owner, which is defined as an executor or administrator of an estate, a conservator or guardian, "or an authorized agent appointed in accordance with a properly-executed power of attorney." 960 Code Mass. Regs. §§ 4.02, 4.04(2)(b).

In short, the careful procedures established by c. 200A to identify presumptively abandoned funds, report and remit those funds to the treasury, and allow the true owner of those funds to reclaim them by proof of ownership simply do not fit when applied to IOLTA accounts. This is not a criticism of the

Legislature; there were no pooled IOLTA accounts in 1950 when the law was enacted, and although the law has since been amended,[9] none of the amendments addresses the unique nature of an IOLTA account.[10]

---

[9] See, e.g., St. 1958, c. 283; St. 1969, c. 377; St. 1975, c. 277; St. 1975, c. 608; St. 1980, c. 130, §§ 3, 4, 7; St. 1984, c. 458; and St. 2000, c. 198.

[10] The IOLTA committee contends that G. L. c. 200A, § 3, does not apply to IOLTA accounts because, under Mass. R. Prof. C. 1.15 (g) (2) (i), banks must remit interest to the committee no less than quarterly, so the account may never be presumed abandoned where G. L. c. 200A, § 3 (2), provides that a bank account is not to be presumed abandoned if the account each quarter has "[b]een credited with interest on a passbook or certificate of deposit at his request." This argument ignores the phrase, "at his request," which requires some act by the owner of the account (here, the attorney) to request the credit of interest. If the passive receipt of automatic interest payments was sufficient to show that a bank account was not presumptively abandoned, any bank account with an established automatic transfer schedule would never be considered abandoned under the statute nor ever be remitted to the treasury -- undermining the statute's aim to "provide a smooth and simple procedure for transferring such property into the state treasury and out of the hands of those in unjust possession." Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co., 388 Mass. 410, 423 (1983), quoting 1950 Senate Doc. No. 1, at 22. Moreover, the Treasurer's regulations reflect that an owner's property should not be deemed presumptively abandoned where "the owner maintains an active relationship with a holder with respect to any property of the same owner." 960 Code Mass. Regs. § 4.03(11) (2004). "Activity" is defined in the regulations as an "[a]ction taken by an owner with respect to his or her property which indicates that the owner intends for the property not to be presumed abandoned." 960 Code Mass. Regs. § 4.02. The passive receipt of interest is not an "activity" and is insufficient to rebut a presumption of abandonment.

The Treasurer seeks to fit IOLTA accounts into § 3 by arguing, in the alternative, that the definition of "person" holding unclaimed property who is required to report and transmit the property to the treasury is broad enough to include the attorney responsible for the IOLTA account. It is certainly true that the definition of "person" under the abandoned property law is broad enough to include an attorney or law firm holding funds on behalf of a client or third person. See G. L. c. 200A, § 1 ("person" includes "any individual" or "partnership"). However, in the context of § 3, this would require the attorney responsible for the account, and not the bank, to report to the Treasurer that the funds in an IOLTA account are presumptively abandoned where the client or the third person who is the beneficial owner of the funds has not communicated with the attorney for three years regarding the funds. There are two problems with this alternative argument.

First, G. L. c. 200A, § 7, requires the "holder" of funds deposited in a bank that are presumptively abandoned to file a report based on "the records of the holder." There is nothing in the Treasurer's regulations or in the record to suggest that the Treasurer has informed banks that, with regards to IOLTA accounts, the attorney is the holder of the funds, not the bank. Under the Treasurer's regulations, "holder" is defined as "[t]he entity that has custody of abandoned property," which suggests

that, at least with respect to bank deposits, the holder is expected to be an entity rather than an individual attorney. 960 Code Mass. Regs. § 4.02. Nor is there any language in c. 200A or the regulations to suggest that there may be multiple "holders" of the same funds, and any such suggestion would be a recipe for confusion, because it would mean that multiple reports would be filed regarding the same abandoned funds. To be sure, law firms and legal service agencies at times have filed abandoned property reports regarding an IOLTA account with the Treasurer, but the vast majority of such reports are filed by banks. According to the director of audit and compliance for the division, as of December 1, 2019, 572 "IOLTA-type properties" were unclaimed in the abandoned property database, but only thirteen of the submitted reports were from law firms; one was from a legal aid organization.

Second, if the attorney responsible for an IOLTA account is deemed the "holder" of the account, the Treasurer or her agents "may at any reasonable time and upon reasonable notice examine or audit a holder's books, papers or other records to verify proper compliance with the reporting requirements of [c. 200A]." 960 Code Mass. Regs. § 4.07 (2004). Section 3 cannot be reasonably understood to mean that, by opening an IOLTA account, which an attorney may be required to do under our rules of professional conduct, the attorney opens the door to treasury

agents examining all of his or her books, papers, and other records, which may contain confidential client information, attorney-client communications, or attorney work product. Allowing that to happen in the ordinary course might result in a breach of an attorney's obligations to his or her client. See Commonwealth v. Perkins, 450 Mass. 834, 851 (2008) ("It is axiomatic that among the highest duties an attorney owes a client is the duty to maintain the confidentiality of client information" [citation omitted]); Mass. R. Prof. C. 1.6 comment 2, as amended, 474 Mass. 1301 (2016) ("A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent or as otherwise permitted by these Rules, the lawyer must not reveal confidential information relating to the representation. . . . This contributes to the trust that is the hallmark of the client-lawyer relationship"); Mass. R. Prof. C. 1.6 (providing for protection of confidential client information).

We therefore conclude, given the incongruent fit between § 3 and IOLTA accounts, that G. L. c. 200A, § 3, does not apply to unidentified funds deposited in IOLTA accounts. Where the Treasurer does not contend that any of the other seven enumerated sections in c. 200A apply to these funds, we conclude

that IOLTA accounts fall outside the scope of the abandoned property law.[11]

5. Identification, investigation, and disposition of abandoned IOLTA funds. Our conclusion that c. 200A does not govern IOLTA accounts does not mean that there will be no process to identify abandoned funds in IOLTA accounts, to investigate bank and attorney records to determine the true owners of those funds, to restore the funds to those true owners, and to transfer any funds whose true owner cannot be identified despite diligent investigation. It simply means that we must put that process in place through our superintendence authority over the bar and the practice of law. We do so here, and direct this court's standing advisory committee on the rules of professional conduct (standing committee) to propose amendments to Mass. R. Prof. C. 1.15 to incorporate the following guidance into our rule.

Just as a dishonored check in an IOLTA account is an indicator of a possible disciplinary violation by an attorney regarding his or her management of an IOLTA account, so, too, is the absence of any activity in an IOLTA account over an extended

---

[11] Because we conclude that the first set of required statutory conditions is not met, we need not address whether unidentified funds in IOLTA accounts meet the second set of required conditions in § 1A for the funds to be "presumed abandoned" under the statute.

period of time. We currently require lawyers to maintain IOLTA accounts only in financial institutions that agree to notify the board when a check is dishonored for insufficient funds. See Mass. R. Prof. C. 1.15 (h). See also Go-Best Assets Ltd. v. Citizens Bank of Mass., 463 Mass. 50, 60 (2012). Such notification permits bar counsel to investigate the attorney to determine whether the dishonored check arises from a disciplinary violation regarding the attorney's management of client funds, from financial mismanagement that could be remedied with appropriate guidance or supervision, or from a simple careless mistake. We shall now require similar agreements to impose an obligation on financial institutions to notify the board when there is no activity in an IOLTA account for more than two years, apart from automatic interest payments to the IOLTA committee.[12] This notification will allow bar counsel, where appropriate, to conduct a forensic examination of the attorney's IOLTA account records, and other books and records, to ascertain whether the funds are abandoned and determine the true owner of any such funds so that they may be disbursed. In addition, such notice will allow bar counsel to

---

[12] This court's standing advisory committee on the rules of professional conduct, in proposing amendments to Mass. R. Prof. C. 1.15, may consider whether a different time period is more appropriate to accomplish our purpose for requiring such notification.

determine whether the prolonged inactivity of the account is a sign of possible disciplinary violations or financial mismanagement by the attorney.

Of course, bar counsel need not wait for two years of IOLTA account inactivity to examine whether there are presumptively abandoned funds in certain IOLTA accounts. As discussed supra, Supreme Judicial Court rules are already in place requiring an attorney who is suspended from the practice of law, disbarred, or placed on disability inactive status, or has resigned from the bar during a disciplinary investigation, to close every IOLTA account, disburse or transfer all IOLTA funds, and report to bar counsel the disposition of all such funds, which should reveal the existence of any unclaimed or unidentified funds. See S.J.C. Rule 4:01, § 17 (1), (5) (c). And where an attorney dies, disappears, or becomes inactive because of disability, and where no partner, executor, or other responsible person disburses or transfers the funds in the attorney's IOLTA account, a single justice of the county court may appoint a commissioner to identify the owners of the funds in the IOLTA accounts and disburse the monies. See S.J.C. Rule 4:01, § 14 (1). With vigilant bar counsel and commissioners, the number and dollar amount of unidentified IOLTA funds should be minimized.

But as this case demonstrates, there will still be unidentified funds in IOLTA accounts that, despite exhaustive forensic investigation, will elude all reasonable efforts to determine and locate their true owner.[13] There are two reasonable alternative dispositions of these funds: the Commonwealth's general fund, where abandoned property within the scope of G. L. c. 200A is ultimately transferred pursuant to G. L. c. 200A, § 9 (e); or the IOLTA committee, where the interest on IOLTA accounts is transferred, which is in turn distributed pursuant to Mass. R. Prof. C. 1.15 (g) to entities that will deliver civil legal services to those who cannot afford them or improve the administration of justice. Some

---

[13] We are of course concerned about the 572 "IOLTA-type properties" currently unclaimed in the abandoned property database. It is unclear whether bar counsel was alerted to their existence before this litigation, or how bar counsel would otherwise be alerted to abandoned IOLTA accounts in order to begin an investigation or disciplinary proceeding. It is also unclear whether bar counsel has conducted, or will be able to conduct, investigations into whether the funds in these 572 accounts are truly unidentified or simply unclaimed.

States have chosen the first alternative.[14]  Others have chosen the second alternative.[15]

Even though the disposition of these funds is not governed by c. 200A because IOLTA funds fall outside the scope of the abandoned property law, we recognize and respect the legislative purpose that all abandoned property be transferred to the general fund.  We would, pursuant to our superintendence authority, transfer these funds to the general fund out of respect for that legislative purpose if funds deemed abandoned could never be claimed by their rightful owner.  But such claims may be made, with no limitations period, and therein lies the rub.

If we were to determine that unidentified IOLTA funds should be transferred to the Treasurer, we would expect the Treasurer to apply the same claims process to IOLTA funds, which fall outside the scope of c. 200A, as she applies to abandoned

---

[14] See, e.g., Alaska Bar Association Ethics Opinion No. 90-3 (1990); State Bar of Arizona Ethics Opinion No. 97-03 (1997); State Bar of Georgia Formal Advisory Opinion No. 98-2 (1998); State Bar of Michigan Ethics Opinion No. RI-38 (1989); Mississippi Ethics Opinion No. 178 (1990); N.C. R. Prof. C. 1.15-2(r); Washington Bar Association, Ethics FAQ ("What do I do with unclaimed trust account funds?"), citing Wash. Rev. Code § 63.29, https://www.wsba.org/for-legal-professionals/ethics/ethics-faqs#unclaimed [https://perma.cc/2R3H-GUFW].

[15] See, e.g., Ark. R. Prof. C. 1.15(c)(1)-(2); Colo. R. Prof. C. 1.15B(k); Ill. R. Prof. C. 1.15(i); La. R. Prof. C. 1.15(g)(7)-(8), (h); N.J. Court Rule 1:21-6(j); N.Y. R. Prof. C. 1.15(f); Pa. R. Prof. C. 1.15(v).

funds that are within the scope of c. 200A. Under that process, when someone claims an interest in property surrendered to the State, the Treasurer has "full and complete authority to determine all such claims" and, in doing so, may take testimony under oath, subpoena the attendance of witnesses, and subpoena the production of all "books, papers and documents which may be pertinent to such hearing." G. L. c. 200A, § 10 (b)-(c). This is precisely the type of inquiry that we are reluctant to relinquish to the Treasurer should a claim be made on unidentified IOLTA funds by an attorney's client. Attorney records concerning IOLTA accounts are necessarily intertwined with attorney-client confidences. Any such inquiry by the Treasurer poses the risk of impermissible disclosure of confidential client information, attorney-client communications, and attorney work product.

We conclude that there is a better approach that is more protective of the confidential information so fundamental to the attorney-client relationship: where bar counsel determines after reasonable investigation that the owner of IOLTA funds cannot be identified or located, bar counsel should request the single justice of the county court to find that the funds are presumptively abandoned and to order the transfer of the

abandoned funds to the IOLTA committee.[16]  The transfer of these funds to the IOLTA committee, in order to avoid constitutional concerns, carries with it an obligation by the committee to return those funds to their true owner, with interest, if the true owner establishes ownership at any time.  Therefore, we will revise our rules of professional conduct to memorialize that obligation after considering language recommended by our standing committee.[17]  Where such a claim is made, the investigation of its merits should be conducted by bar counsel, whose obligation to maintain the confidentiality of information arising from an investigation is already established by rule. See S.J.C. Rule 4:01, § 20, as amended, 438 Mass. 1301 (2002).

---

[16] Where the owner of the IOLTA funds has been identified but cannot be located, the Board of Bar Overseers shall publish the name on a webpage on its website to allow the missing client or third person to reclaim his or her abandoned funds from the IOLTA committee.  Nothing in this opinion is intended to prevent the board from seeking the agreement of the Treasurer to include these names on her abandoned property website, with the proviso that any persons claiming ownership of such property will be referred to bar counsel for investigation.

[17] The Treasurer does not allege that there is any constitutional bar to the transfer of funds to the IOLTA committee but instead contends that "constitutional problems could arise" under the takings clause of the Fifth Amendment or under the First Amendment to the United States Constitution, if the transfer were deemed compelled speech.  The Treasurer does not have standing to raise such claims, see Tax Equity Alliance for Mass. v. Commissioner of Revenue, 423 Mass. 708, 715-716 (1996), and in any event she recognizes that the weight of these claims is diminished if a claimant who can establish ownership of previously unidentified IOLTA funds will be able to recover those funds from the IOLTA committee, with interest, at any time.

Any dispute concerning the adjudication of ownership shall be resolved by the single justice.

Conclusion. In answer to the questions posed by the single justice in his reservation and report, we conclude that unidentified client funds on deposit in an IOLTA account do not fall within the statutory definition of "abandoned property" under G. L. c. 200A; that neither Mass. R. Prof. C. 1.15 nor any other rule of this court presently governs the disposition of such funds; and that such funds shall be transferred to the IOLTA committee for disposition under the conditions set forth in this opinion, which shall later be incorporated in revisions to Mass. R. Prof. C. 1.15.

So ordered.

LOWY, J. (dissenting).  The court holds, without an adequate factual record to support it, that Interest on Lawyers' Trust Accounts (IOLTAs or IOLTA accounts) fall outside the abandoned property act (act), in part because the alternative would allow the Treasurer and Receiver General (Treasurer) to inspect attorneys' records in a manner that could allow the Treasurer to maintain and to investigate IOLTA accounts, as she does with other abandoned property.  This, according to the court, would improperly risk "disclosure of confidential client information, attorney-client communications, and attorney work product," all of which fall under the attorney-client privilege governed by the judicial branch.  Ante at    .  Because the court concludes as such, it avoids having to decide whether classifying orphaned IOLTA funds as abandoned property would impede upon the judiciary's authority under art. 30 of the Massachusetts Declaration of Rights to regulate the practice of law, or whether keeping unclaimed IOLTA accounts within the province of the judiciary would unduly interfere with the executive or legislative powers as outlined in art. 30.

I, on the other hand, believe that the plain meaning and legislative intent of the act require categorizing unclaimed or orphaned IOLTA funds as abandoned property, a conclusion that prevents us from avoiding the lurking separation of powers issues.  I therefore do not believe that we should draw any

definitive conclusions from the bare factual record.  Instead,
we should remand to a trial court to develop a more complete
record.

First, orphaned IOLTA funds, at least based on this limited
record, seem to fit within the act's definition of abandoned
property, specifically as intangible property, property on
deposit in a bank, or, perhaps, as security deposits.[18]  See
G. L. c. 200A, §§ 1A, 3, 4.  Because IOLTA funds are deposited
into "trust accounts" in a bank by attorneys operating on behalf
of their clients in a fiduciary capacity, such funds facially
qualify as abandoned property under the act absent some
compelling factual or legal reason to the contrary.  See Mass.
R. Prof. C. 1.15, as appearing in 471 Mass. 1380 (2015).  Aside
from plain meaning, the Legislature intended the act to "set[]
forth a comprehensive scheme governing the disposition of
abandoned property," Biogen IDEC MA, Inc. v. Treasurer &
Receiver Gen., 454 Mass. 174, 176 (2009), including "all kinds"

---

[18] The Treasurer contended that IOLTA accounts fall within
G. L. c. 200A, § 3, and the court cabined its analysis to that
section of the act.  In whole, G. L. c. 200A, § 4 states:
"Subject to the provisions of section one A, any deposit of
property made to secure payment for services rendered or to be
rendered, or to guarantee the performance of service or duties,
or to protect against damage or harm, and the increments
thereof, shall be presumed abandoned, unless claimed by the
person entitled thereto within three years after the occurrence
of the event that would obligate the holder or depository to
return it or its equivalent."

of unclaimed property "whose owner is unknown or had neglected to claim it during a specific number of years," Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co., 388 Mass. 410, 412-413, 423 (1983). Whether one conceives of the owner as the attorney who opened the IOLTA account or the clients whose funds constitute the account, the legislative intent facially captures IOLTA accounts.

The court argues that "attempting to apply § 3 to IOLTA accounts would be the legal equivalent of trying to fit a square peg into a round hole." Ante at . Statutory interpretation, however, does not pursue a perfect fit when effectuating legislative intent, and some square pegs can fit into round holes. See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 604 (2019). To that end, the court contends that orphaned IOLTA funds do not qualify as abandoned property because the true owner is the client, not the attorney listed on the account, and the holder of the account, the bank, could not therefore notify the true owner in advance of deeming the property presumptively abandoned. See G. L. c. 200A, § 7 (b) (1) (bank must report name and last known address of "each person appearing from the records of the holder to be the owner"); G. L. c. 200A, § 7A (if holder has accurate address of "apparent owner" of property presumed abandoned, then holder

must send notice "of the process necessary to rebut the presumption of abandonment").

This apparent "square peg" actually fits quite nicely into the act, even though the statute does not define "owner," see G. L. c. 200A, § 1, because attorneys acting as fiduciaries have a "legal . . . claim to abandoned property" on behalf of their clients and therefore qualify as "owners" under the Treasurer's regulations.[19]  960 Code Mass. Regs. § 4.02 (2004).  See Matter of Sharif, 459 Mass. 558, 565 n.7 (2011) (explaining ways that attorney must act as fiduciary for trust accounts).  See also Biogen IDEC MA, Inc., 454 Mass. at 186-187 (in absence of clear statutory language to contrary, we must defer to Treasurer's regulations).  Because the attorney is the owner of the IOLTA account, I am not convinced on this record that the bank could not comply with its statutory obligations to notify the owner in advance of reporting the IOLTA account as abandoned property.[20] See G. L. c. 200A, §§ 7 (b) (1), 7A.

---

[19] I presume that, in the context of this case, Gregory M. Olchowski's counsel, who requested the transfer of the IOLTA account, would have legal claim to the property.

[20] The court seems to recognize that attorneys acting as fiduciaries for IOLTA funds are owners of those accounts when refuting an argument made by the IOLTA committee that trust-bearing accounts cannot qualify as abandoned property under the act.  Under the act, earning interest rebuts the presumption of abandonment only "at his request," which, according to the court, "requires some act by the owner of the account (here, the

Moreover, the regulations appear to account for circumstances where an attorney or other fiduciary may be the "owner" of an account that becomes abandoned for which the "true owners" of the funds, the clients, can file to reclaim property that was abandoned due to their fiduciaries' irresponsibility. See John Hancock Mut. Life Ins. Co., 388 Mass. at 426 ("The focus of the statute is to reunite the owners with their property, and therefore it is irrelevant that John Hancock does not own [or control] the property"). The Treasurer's regulations outlining the claims process note that only the "original owner" can make a claim by presenting certain documents, such as a "monthly statement, if applicable." 960 Code Mass. Regs. § 4.04(2)(a) (2004). Although clients may not have documents, such as the specific IOLTA account information, they could still make a claim by presenting "other documentation as may be required by the [unclaimed property division] to substantiate the validity of the claim," since the Treasurer would likely recognize that those other documents were not "applicable." Id. Alternatively, the owner's "legal representative" may make a claim on behalf of the client. 960 Code Mass. Regs. § 4.04(2)(b). The record shows that banks and law firms have transferred 572 IOLTA accounts to the Treasurer

attorney) to request the credit of interest." Ante at note 10, quoting G. L. c. 200A, § 3 (2).

as abandoned property, but the record does not reflect the claims process to which clients with funds in those accounts have adhered. The existing framework seems capable of handling claims by the true owners of funds within IOLTA accounts.

The court next alleges that it would be improper for an attorney to be a "holder" under the act -- the individual who would have to file reports about presumptively abandoned property -- even though the statute's definition of a person who can hold property is broad enough to encompass an attorney acting as the fiduciary for IOLTA funds. See G. L. c. 200A, § 1. The court worries that this would create an unmanageable scenario with multiple persons with statutory responsibilities as holders of one pool of property under the act. To the contrary, it is perfectly plausible that the bank would be a holder for the IOLTA account and the attorney would be a holder for the apportioned IOLTA funds within the account. In fact, it makes logical sense that responsible attorneys would report abandoned IOLTA funds to the Treasurer as abandoned property if they could not contact clients for three years, and that the bank would report the entire IOLTA account if it qualified as presumptively abandoned under the act. See 960 Code Mass. Regs. § 4.02. Although the court claims that this scenario "would be a recipe for confusion," ante at    , the factual record provides no indication of such confusion, especially considering

that some attorneys and law firms have reported IOLTA funds as abandoned property.  We simply need more information.

Even if I were to agree with the court's statutory analysis, my foundational concern about the inadequate record remains for the court's apparent primary concern:  that the Treasurer might need to investigate attorneys' books to determine to whom the unclaimed IOLTA funds belong, see G. L. c. 200A, § 10 (b)-(c), or to ensure that attorneys complied with their requirements as holders.  See 960 Code Mass. Regs. § 4.07 (2004).  The court raises the understandable concern that "[a]llowing [such an investigation] to happen in the ordinary course might result in a breach of an attorney's obligations to his or her client," ante at    , but only hints at the second-level implication of that statement; allowing the Treasurer such access as the statute would require might invade upon the judiciary's art. 30 power to protect attorney-client privilege and attorney confidentiality as part of its power to regulate the practice of law.

Of course, the court does not need to reach whether those fears would come true, because its version of statutory interpretation keeps IOLTA accounts outside the realm of abandoned property and therefore out of the possible reach of the Treasurer.  The court accordingly has no obligation to provide evidence that such breaches occur or that investigations

by the Treasurer would impede upon our art. 30 authority.  I view the matter differently.

Because I conclude that orphaned IOLTA funds qualify as abandoned property under the act, we can only keep the Treasurer from exercising her statutory obligations regarding those funds based on some interpretation of our constitutional authority to regulate the practice of law.  We could hold that the act is unconstitutional as applied to orphaned IOLTA funds, or we could craft an alternative solution that gives the Treasurer control over the orphaned IOLTA funds without unduly impeding the attorney-client privilege.  Either solution necessarily implicates separation of powers concerns, as both could interfere with the Legislature's and the executive branch's powers under art. 30.  In sum, concluding that unclaimed IOLTA funds constitute abandoned property requires me to consider how the court's proposed solution, one that still might be constitutionally or statutorily permissible even though I determined that IOLTA accounts are abandoned property under the act, affects art. 30, and to consider whether it does so appropriately on the facts before the court.

Before we reach such a significant decision, I believe that we need a factual record to help answer critical questions beyond the bare joint statement of facts presented to the single justice.  The record does not reflect whether investigating

unclaimed funds in IOLTA accounts would necessarily violate the attorney-client privilege. The amicus briefs presented by the Boston Bar Association and others and by the Board of Bar Overseers (BBO) suggest that it does, but the factual record only explains that a financial investigator subpoenaed records from banks and examined records held by Gregory M. Olchowski's former accountant. There is no indication that the investigation necessarily pierced the veil of attorney-client privilege, which, if accurate, would lessen the art. 30 concerns for orphaned IOLTA funds constituting abandoned property because the Treasurer would not therefore be impeding upon the judiciary's art. 30 authority to regulate the practice of law.[21]

Moreover, there might be an alternative path that neither ignores the act's plain meaning nor imposes on or interferes with our art. 30 obligations, and that simultaneously respects the Legislature's and executive branch's powers. However, the parties only briefed opposing absolutes: the Treasurer claimed complete authority to investigate and to manage orphaned IOLTA

---

[21] As stated supra, the record notes that entities have transferred 572 IOLTA accounts to the Treasurer as abandoned property. The record makes no reference to whether the Treasurer has investigated these properties to determine the true owner and, if so, whether those investigations pierced the veil of attorney-client privilege. Moreover, the record does not reflect whether investigations into other types of abandoned property, such as trust funds or remainders of estates, which I presume are under the authority of the Treasurer, would also pierce the veil of attorney-client privilege.

accounts, no matter attorney-client privilege, while the IOLTA committee and Olchowski, who the court largely followed, put the power squarely with the judiciary.  I agree with the court that it is possible that classifying IOLTA accounts as abandoned property could interfere with the judiciary's art. 30 authority to regulate the practice of law.  On the other hand, mitigating that concern by following the court's chosen path, which would transfer abandoned IOLTA funds to the judiciary's control rather than to the general fund, or by ordering the Treasurer to respect attorney-client privilege could also offend art. 30 by unduly interfering with legislative or executive authority.[22]

We simply need to know more before we meddle with the separation of powers, a principle that is the foundation of our

---

[22] The court contemplates that someone will have to review attorney-client privileged materials to determine the true owners of the IOLTA funds, but it does not discuss any precise procedures for doing so beyond keeping the funds within the judiciary and having the BBO conduct an inquiry in a manner similar to how it assesses attorney accounts during disciplinary procedures.  There may be alternatives.  For example, it may be constitutionally permissible to require that the Treasurer transfer investigatory responsibilities to an agent of the judiciary, namely the BBO, if an examination of orphaned IOLTA accounts threatened to pierce the veil of attorney-client privilege.  It also might be possible to maintain the privilege if the BBO hired outside counsel to conduct the review.  It may even be possible to rely on an interpleader action, with the Treasurer and the IOLTA committee as nominal parties, so that the unclaimed IOLTA funds are deposited with the court until appropriate disposition of the matter.  See Mass. R. Civ. P. 67, 365 Mass. 835 (1974).  Perhaps these ideas would not be possible or constitutionally permissible, but the parties understandably did not brief this matter.

constitutional system.  I therefore dissent and recommend that we remand to the Chief Justice of the Trial Court for assignment of the case to create a more thorough factual record.